# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CARLOS BEAUFRAND, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>    Defendant. | Case No.: 18-cv-242<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Carlos Beaufrand is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer credit transaction, namely a consumer credit card account opened and used only for personal, family, or household purposes.

6. Defendant GC Services, Limited Partnership ("GCS") is a foreign corporation with its principal place of business located at 6330 Gulfton, Houston, TX 77081.

7. GCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. GCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. GCS is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a.

10. GCS is also a "debt collector" as defined by Wis. Stat. § 427.103(3), in that GCS is directly engaged in the business of a collection agency, soliciting claims for collection and collecting such claims alleged to be owed or due a merchant by a customer.

11. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

12. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

13. GCS is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

14. GCS is a debt collector as defined in Wis. Stat. § 427.103(3).

# FACTS

## *November 7, 2017 Letter*

15.     On or about November 7, 2017, GCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Department Stores National Bank" ("DSNB"). A copy of this letter is attached to this Complaint as <u>Exhibit A</u>.

16.     Upon information and belief, DSNB charged off Plaintiff's DSNB account ending in 5556 sometime prior to November 7, 2017. At or before the time DSNB charged off Plaintiff's account, DSNB ceased mailing monthly account statements to Plaintiff and ceased adding interest and fees to Plaintiff's account.

17.     Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> is an alleged personal credit card account, used only for personal, family, or household purposes.

18.     Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

19.     Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

20.     Upon information and belief, <u>Exhibit A</u> was the first written communication Plaintiff received from Defendant regarding the alleged debt referenced in <u>Exhibit A</u>.

21.     <u>Exhibit A</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**CONSUMER INFORMATION:**
Unless you, within thirty (30) days after your receipt of this letter, dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the above described thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you. Additionally, upon your written request within the above described thirty (30) day period, we will provide you with the name and address of the original creditor, if it is different than the current creditor.

22. Exhibit A also contains the following:

> YOU OWE: DEPARTMENT STORES NATIONAL BANK    GC NUMBER: ▮▮▮▮0731
> ***PLEASE DETACH AND RETURN UPPER PORTION OF STATEMENT WITH PAYMENT***
> November 7, 2017
> File Number: ▮▮▮278
> Client Account Number: ENDING 8505
> New Balance: $1,331.98
> Minimum Payment Due: $1,331.98

23. Exhibit A also contains the following:

> * As of the date of this letter, you owe $1,331.98. Because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you.

24. Exhibit A states that, as of November 7, 2017, Plaintiff's DSNB account ending in 0731 had a balance of $1331.98 but that, because of interest, late charges, and other charges, the amount owed was subject to increase and may be greater on the day the debt was paid.

### *December 6, 2017 Letter*

25. On or about December 6, 2017, GCS mailed a debt collection letter to Plaintiff regarding the same alleged debt owed to DSNB. A copy of this letter is attached to this Complaint as Exhibit B.

26. Upon information and belief, the alleged debt referenced in Exhibit B is an alleged personal credit card account, used only for personal, family, or household purposes.

27. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

28. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

29. Exhibit B contains the following:

| YOU OWE: DEPARTMENT STORES NATIONAL BANK | GC NUMBER: ▇▇▇0731 |

***PLEASE DETACH AND RETURN UPPER PORTION OF STATEMENT WITH PAYMENT***

December 6, 2017

File Number: ▇▇▇278
Client Account Number: ENDING 8505
New Balance: **$1,331.98**

30. Exhibit B also contains the following:

\* As of the date of this letter, you owe $1,331.98. Because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you.

31. The statement in Exhibit B that "because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater," is a material representation that the creditor, or the debt collector, may impose "'late charges and other charges' under Wisconsin law."

32. Exhibit B states that, as of December 8, 2017, Plaintiff's DSNB account ending in 5556 had a balance of $1,331.98 but that, because of interest, late charges, and other charges, the amount owed was subject to increase and may be greater on the day the debt was paid.

### *FDCPA and WCA Violations*

33. Exhibits A and B falsely tell the consumer that the balance of the consumer's account may increase due to "interest, late charges and other charges that may vary from day to day," when that representation was untrue.

34. When DSNB charged off Plaintiff's account, DSNB waived its rights to collect interest and late charges because it stopped mailing Plaintiff account statements. *See Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 29 (Ky. 2017) ("Following Harrell's default on her agreement with DSNB, it charged-off Harrell's account and stopped adding interest to Harrell's account, as required by federal law.") (citing 12 C.F.R. § 226.5(b)(2)(i)).

5

35. <u>Exhibits A and B</u> both seek to collect the same "balance" – $1,331.98 – despite being sent one month apart.

36. Upon information and belief, GCS does not add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

37. Upon information and belief, DSNB does not add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

38. Upon information and belief, DSNB does not direct GCS to add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

39. Upon information and belief, GCS cannot add any interest, late charges, or other charges to Plaintiff's account.

40. DSNB has waived future interest, late fees, and other fees, by charging off the account and ceasing sending monthly statements. 12 C.F.R. § 226.5(b)(2)(i).

41. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated.

42. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

43. Each transaction in Plaintiff's DSNB credit card account is a consumer credit transaction. Wis. Stat. § 421.301(10).

6

44. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists any permissible fees that DSNB or GCS could charge in connection with a post-charge off credit card account.

45. Even if a provision of any agreement between Plaintiff and DSNB would purport to permit GCS to impose a collection fee or other post-charge off fees or costs, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

46. The statement in Exhibits A and B, that "because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater," is a materially false, deceptive, and misleading representation that the creditor, or the debt collector could, and would, attempt to collect these charges. *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 *8-9 (7th Cir. Jan. 17, 2018).

47. The statement in Exhibits A and B that "because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater," is a material representation that the creditor, or the debt collector, may impose "'late charges and other charges' under Wisconsin law." *Id.*

48. Exhibit B also contains a settlement offer that contradicts itself.

49. Exhibit B contains the following settlement offer:

> We'd like to let you know that our client, DEPARTMENT STORES NATIONAL BANK, has authorized us to make you a settlement offer on your account. If you pay 75% of the New Balance, our client will consider your account settled.
>
> This is an excellent opportunity to take care of your account. If you wish to take advantage of this offer, either call our office at 866-804-3919 or mail us your payment of $998.99.
>
> Please note the payment must be for the exact amount stated in this letter and must be received no later than fourteen (14) days from the date of this letter or this particular offer will be null and void. Please understand our client is not obligated to renew this offer.

50. Exhibit B states that payment "for the exact amount stated in this letter" must be received within 14 days of the date of Exhibit B in order to accept the offer. Exhibit B.

51. Just below that, however, Exhibit B states:

> * As of the date of this letter, you owe $1,331.98. Because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you.

52. Exhibit B implies that the amount of money necessary to settle the alleged debt changes and may not be the amount stated in the letter.

53. However, in reality, either the settlement offer is for the set, pre-determined amount of $998.99 or it is not. It either varies or it does not.

54. Exhibit B fails to state the terms of the settlement offer in a non-confusing manner. The amounts $1,331.98 and $998.99 are both "shown above" the language identified above.

55. The unsophisticated consumer could not determine from Exhibit B if the settlement offer is for a set amount or a possibly variable amount.

56. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

8

57. The consumer could send a check for $998.99 and would not know whether he had sent enough money to actually settle the account, due to the possibility that GCS or DSNB had added interest or other charges to the settlement amount.

58. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to a few remaining dollars or cents of interest, however, GCS could continue to collect the entire remaining balance of the alleged debt.

59. Plaintiff was confused and misled by Exhibits A and B.

60. Plaintiff had to spend time and money investigating Exhibits A and B, and the consequences of any potential responses to Exhibits A and B.

61. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A and B.

### *The FDCPA*

62. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

9

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated*

10

*Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

63. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

64. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

66. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

67. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

68. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

69. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

11

### *The WCA*

70. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

71. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

72. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

73. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

74. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

75. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

12

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

76. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

77. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

78. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

79. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

80. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

81. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

82. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

83. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Exhibits A and B make a materially misleading representation that Plaintiff's account is subject to additional "interest, late fees, and other charges," when neither the debt collector, nor the creditor, could or does seek these charges in the ordinary course of business.

85. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – FDCPA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Exhibit B provides a purported "settlement offer," but that offer is misleading, as the amount necessary to effectuate the settlement may be greater than the amount printed on the letter and is unspecified.

88. A consumer who mails a payment in the full amount of the "settlement amount" listed on the letter may not have sent enough money to actually settle the claim.

89. Exhibit B encourages settlement payments to be short of the amount necessary for the creditor to agree to settle the alleged debt, allowing GCS or the creditor to continue collecting the remaining balance of the alleged debt, plus additional interest.

90. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## COUNT III -- WCA

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. <u>Exhibits A and B</u> make a materially misleading representation that Plaintiff's account is subject to additional "interest, late fees, and other charges," when neither the debt collector, nor the creditor, could or does seek these charges in the ordinary course of business.

93. Defendant claimed, attempted or threatened "to enforce a right with knowledge or reason to know that the right does not exist." Wis. Stat. § 427.104(1)(j).

94. Defendant violated Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

95. Plaintiff brings this action on behalf of four Classes.

96. Class I consists of (a) all natural persons in the United States of America, (b) who were sent collection letters representing that the account at issue was subject to "interest, late fees, and other charges," (c) for an account that was owned and issued by DSNB, and (d) had been charged off, (e) where the account was incurred for personal, family, or household purposes, (f) and the debt collection letter was mailed between February 15, 2017 and February 15, 2018, inclusive, (e) that was not returned by the postal service.

97. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters representing that the account at issue was subject to "interest, late fees, and other charges," (c) for an account that was owned and issued by DSNB, and (d) had been charged off, (e) where the account was incurred for personal, family or household purposes, (f) and the debt collection letter was mailed between February 15, 2017 and February 15, 2018, inclusive, (e) that was not returned by the postal service.

98. Class III consists of (a) all natural persons in the United States of America, (b) who were sent collection letters in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between February 15, 2017 and February 15, 2018, inclusive, (e) that was not returned by the postal service.

99. Class IV consists of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between February 15, 2017 and February 15, 2018, inclusive, (e) that was not returned by the postal service.

100. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

101. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A and/or Exhibit B violate the FDCPA.

102. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

103. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

104. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**JURY DEMAND**

105. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 15, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

17